❒ Original ❒ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Information about the location of the cellular telephones assigned call numbers 414-316-1177 and 414-312-3461

Case No. 26-946M(NJ)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ____________ District of ____________ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 7/20/2026 *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Honorable Nancy Joseph.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for ____ days *(not to exceed 30)* ☑ until, the facts justifying, the later specific date of 12/28/2026.

Date and time issued: 7/6/2026 @ 2:05 pm

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| --- | --- | --- |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ______________________

*Executing officer's signature*

*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

1. Records and information associated with the cellular device assigned call number 414-316-1177 (referred to herein and in Attachment B as the "Target Cell Phone 1" or **TT1**), and the cellular device assigned call number 414-312-3461 (referred to herein and in Attachment B as the "Target Cell Phone 2" or **TT2**), that is in the custody or control of Verizon Wireless (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is One Verizon Way, Basking Ridge, New Jersey, 07920.

2. The Target Cell Phones **TT1** and **TT2**.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider, the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with Target Cell Phone 1 (**TT1**) and Target Cell Phone 2 (**TT2**) for the time period from May, 1 2026, to the present:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. Timing Advance/All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by **TT1** and **TT2**, including:

1. The date and time of the communication, the method of communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and
2. Information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from **TT1** and **TT2** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which **TT1** and **TT2** will connect at the beginning and end of each communication.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with **TT1** and **TT2**.

c. Information about the location of **TT1** and **TT2** for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of **TT1** and **TT2** on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The

government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, contraband, and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) (conspiracy to possess with intent to distribute a controlled substance, possession with intent to distribute a controlled substance, and unlawful use of a communication facility), involving Rahtice L. FRAZIER, (B/M, DOB: 12-9-1980), and others during the period from May 1, 2026 to the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this warrant.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the location information. *See* 18 U.S.C. § 3103a(b)(2).

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Information about the location of the cellular telephones assigned call numbers 414-316-1177 and 414-312-3461

Case No. 26-946M(NJ)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ______________ District of ______________________, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 841(a)(1), 846 & 843(b) | Distribution of a Controlled Substance, Conspiracy to Distribute a Controlled Substance, and Unlawful Use of a Communication Facility |

The application is based on these facts:

See attached Affidavit

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of 180 days *(give exact ending date if more than 30 days:* 12/28/2026 *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

PATRICK COE Digitally signed by PATRICK COE Date: 2026.07.01 08:13:18 -05'00'

*Applicant's signature*

Patrick Coe, DEA Task Force Officer

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 7/6/2026

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**<u>AN APPLICATION FOR A SEARCH WARRANT</u>**

I, Patrick Coe, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 414-316-1177 (the "**Target Cell Phone 1**" (**TT1**)), and of the cellular telephone assigned call number 414-312-3461 (the "**Target Cell Phone 2**" (**TT2**)), whose service provider is Verizon Wireless ("Service Provider"), a wireless telephone service provider headquartered at One Verizon Way, Basking Ridge, New Jersey, 07920. **TT1** and **TT2** are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from **TT1** and **TT2**.

3. I am a Task Force Officer with the Drug Enforcement Administration and have been since November 2020. I have been an officer with the Milwaukee Police Department for over 16 years.

4. I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, United States currency, and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the affiant on many search warrants. I have also spoken on numerous occasions with other experienced narcotics investigators, both foreign and domestic, concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses, which specialized in the investigation of drug trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds.

5. Based on my training, experience, and conversations with other law enforcement officers, I know that distributors of marijuana, methamphetamine, cocaine, heroin, fentanyl as well as other controlled substances, often use cellular and landline telephones. Additionally, I know that drug traffickers often change their phone numbers and cellular devices on a frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identities. I know that these individuals often use code words to discuss controlled substances and methods of concealing controlled substances while talking on the telephone.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Throughout this affidavit, reference will be made to case agents or investigators. Case agents or investigators are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) (conspiracy to possess with intent to distribute a controlled substance, possession with intent to distribute a controlled substance, and unlawful use of a communication facility), have been committed by Rahtice L. FRAZIER, (B/M, DOB: 12-19-1980). There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

8. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

9. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Rahtice L. FRAZIER, (B/M, 12-19-01980), and others regarding violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b).

10. In May 2026, a confidential source, hereinafter referred to as CS1, met a subject identified as Rahtice L. FRAZIER (B/M, DOB: 12-19-1980). CS1 informed investigators that FRAZIER sells mid-level quantities of fentanyl in the Milwaukee, Wisconsin area. FRAZIER provided cellular phone number 414-316-1177 **(TT1)** to CS1.

11. On June 2, 2026, using **TT1**, FRAZIER called CS1. During the call, FRAZIER discussed fentanyl prices with CS1. Specifically, FRAZIER quoted CS1 a price of $45.00 per gram of fentanyl. FRAZIER informed CS1 that he wanted a long-term business relationship with CS1. FRAZIER then provided CS1 with a secondary phone number, i.e., 414-312-3461 **(TT2)**, through which CS1 could communicate with FRAZIER via WhatsApp, which allows users to exchange, *inter alia*, text messages, audio messages, video messages, and files such as documents and photos with other WhatsApp users. It also permits users to engage in real-time voice and video calls and to set up and participate in group chats. Messages and calls sent through WhatsApp Messenger are transmitted over the internet via WhatsApp servers located in the United States. A user may use a cellular provider's data network or another data connection (such as a home wireless router or a public wireless hotspot) to which the user's device is connected to and send messages via WhatsApp Messenger. CS1 believes that FRAZIER uses both telephone numbers interchangeably and to conduct business.

12. Based on training and experience, your Affiant knows that the WhatsApp application is often used for illegal activities, more specifically drug transactions. The application uses end to end conversation encryption. Based on this end-to-end encryption, your Affiant knows

---

1 Your Affiant believes CS1 to be a credible person for the following reasons. CS1 has been in consistent communication with investigators. CS1 has made statements against their penal interest for the purpose of assisting law enforcement. CS1 has been responsive to law enforcement. CS1 provided information that investigators have independently corroborated. CS1 has conducted several controlled buys at the direction of law enforcement, which have led to multiple targets and several investigations. CS1 has been convicted of two felonies. CS1 is currently working with law enforcement for judicial consideration.

that drug dealers often believe that the WhatsApp application offers a more secure way to discuss illegal activities given the greater difficulty for law enforcement to intercept such encrypted communications.

13. On June 7, 2026, CS1 called **TT2** via the WhatsApp application to speak with FRAZIER. During this call, FRAZIER agreed to sell CS1 50 grams of fentanyl the next day for $2250. On Monday, June 8, 2026, CS1 met investigators at the Drug Enforcement Administration (DEA) Milwaukee District Office (MDO). At this time, investigators searched CS1 and CS1's vehicle, yielding negative results. FRAZIER, using **TT2**, called CS1, via the WhatsApp application, and instructed CS1 to meet FRAZIER in a restaurant parking lot in the Milwaukee, Wisconsin area. Investigators supplied CS1 with $2250.00 of DEA funds and an audio and video recording device that investigators were able to monitor in real time. Investigators followed CS1 to the agreed meet location. Upon arrival, CS1 parked CS1's vehicle near FRAZIER's vehicle. Investigators observed FRAZIER exit his vehicle and enter CS1's vehicle. Investigators observed FRAZIER place a white grocery inside the cup holder of CS1's vehicle. Investigators observed CS1 hand FRAZIER U.S. currency. After a short conversation with CS1, FRAZIER exited CS1's vehicle, returned to his vehicle, and departed from the location. After this transaction, CS1 met with your Affiant at a secure location. During this meeting, your Affiant recovered the plastic grocery bag that FRAZIER was observed placing in the cupholder of CS1's vehicle. Your Affiant noticed that this plastic grocery bag contained a clear plastic sandwich bag filled with a light grey chunky substance, which your Affiant suspected to be contraband. Your Affiant transported the suspected contraband to the MDO where the suspected contraband field tested positive for fentanyl. The fentanyl weighed 50.1 grams.

14. Your Affiant also submitted administrative subpoenas to Verizon wireless for **TT1** and **TT2**. Based on the information provided by Verizon, your Affiant noted that for the entire

month of June 2026, the telephone numbers contacted by **TT1** and **TT2** remained consistent, indicating to investigators that the user(s) of those numbers did not change in June. Your Affiant observed that **TT1** contacted the same top five (5) phone numbers consistently throughout the month of June. Like **TT1**, **TT2** consistently contacted the same top five (5) phone numbers in June 2026. Your Affiant also observed that there was no interruption in cellular service for **TT1** and **TT2** during this timeframe. Based on the foregoing, your Affiant believes this data suggests that **TT1** and **TT2** had (a) common user(s) for the entire month of June 2026.

## TECHNICAL BACKGROUND

15. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

### Cell-Site Data

16. Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about **TT1** and **TT2**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers

involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**E-911 Phase II / GPS Location Data**

17. I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of **TT1** and **TT2**, including by initiating a signal to determine the location of **TT1** and **TT2** on the Service Provider's network or with such other reference points as may be reasonably available.

**Pen-Trap Data**

18. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the

embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

**Subscriber Information**

19. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify **TT1** and **TT2**'s user or users and may assist in the identification of co-conspirators.

**AUTHORIZATION REQUEST**

20. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

21. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

22. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of **TT1** and **TT2** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

23. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **180 days** after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **TT1** and **TT2** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

24. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **TT1** and **TT2** outside of daytime hours.

## ATTACHMENT A

**Property to Be Searched**

1. Records and information associated with the cellular device assigned call number 414-316-1177 (referred to herein and in Attachment B as the "Target Cell Phone 1" or **TT1**), and the cellular device assigned call number 414-312-3461 (referred to herein and in Attachment B as the "Target Cell Phone 2" or **TT2**), that is in the custody or control of Verizon Wireless (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is One Verizon Way, Basking Ridge, New Jersey, 07920.

2. The Target Cell Phones **TT1** and **TT2**.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider, the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with Target Cell Phone 1 (**TT1**) and Target Cell Phone 2 (**TT2**) for the time period from May, 1 2026, to the present:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. Timing Advance/All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by **TT1** and **TT2**, including:

1. The date and time of the communication, the method of communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and
2. Information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from **TT1** and **TT2** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which **TT1** and **TT2** will connect at the beginning and end of each communication.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with **TT1** and **TT2**.

c. Information about the location of **TT1** and **TT2** for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of **TT1** and **TT2** on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The

government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, contraband, and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) (conspiracy to possess with intent to distribute a controlled substance, possession with intent to distribute a controlled substance, and unlawful use of a communication facility), involving Rahtice L. FRAZIER, (B/M, DOB: 12-9-1980), and others during the period from May 1, 2026 to the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this warrant.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the location information. *See* 18 U.S.C. § 3103a(b)(2).